UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE ESTATE OF EDWARD DEEGAN )
)
By )
)
RICHARD P. DEEGAN, IN HIS )
CAPACITY AS ADMINISTRATOR )
OF THE ESTATE OF EDWARD )
DEEGAN )
)
PLAINTIFFS )
)
V. )    CIVIL ACTION NO.:
)
UNITED STATES OF AMERICA )
ESTATE OF H. PAUL RICO, )
DENNIS CONDON, )
VINCENT JAMES FLEMMI, )
JOSEPH BARBOZA, )
JOHN DOES, NO. 1-25 )
)

**COMPLAINT**

## I.  INTRODUCTION

1.    The Estate of Edward Deegan files this Complaint, pursuant to the Federal

Tort Claims Act, 28 U.S.C. §§ 2671, et seq, Chapter 229 of the Massachusetts General

Laws and _Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,_ 403

U.S. 338 (1971), against the United States of America, two former agents of the Boston

Office of the FBI, H. Paul Rico and David Condon (federal defendants) and, Vincent

James Flemmi, Joseph Barboza, and John Does No. 1-25.

2.    Plaintiff seeks redress for the murder of Edward Deegan ("Deegan").  As a

proximate cause of the federal defendants' acts and/or omissions, Deegan was wrongfully

killed and his rights as guaranteed by the Fourth and Fifth Amendments to the United States Constitution and Massachusetts law were violated, as were the Estate's rights to redress its grievances in the courts of the United States as guaranteed by the First and Fifth Amendments to the United States Constitution.

3.     Plaintiff alleges that beginning in or about early 1964 and continuing up to 1970, the federal defendants conspired to protect and shield from prosecution defendants Flemmi, Barboza and others in exchange for their agreements to provide information to aid the FBI in its prosecution of organized crime. It was the object of the conspiracy for the federal defendants to protect the informants from arrest and prosecution in order to maintain their roles as informants providing information to the FBI. Plaintiff alleges that the defendant United States and federal defendants knew or should have known that defendants Barboza and Flemmi were involved in violent criminal activity, including murder, extortion, loan sharking, and assault, but despite this knowledge failed or refused to investigate their criminal activity for purposes of prosecution because, if prosecuted, the federal defendants would lose their services as informants.

4.     The Complaint alleges that the defendant United States continued to utilize Barboza as a cooperating witness and Flemmi as a top informant, even though they had been involved in a number of murders. Furthermore, the Complaint alleges that the federal defendants failed to control the criminal activities of Barboza and Flemmi; failed to enforce the FBI Manual Guidelines concerning informants; violated the Attorney General's Regulations and Policies by failing to inform appropriate law enforcement authorities of the criminal activities of Barboza and Flemmi; failed to properly supervise federal agents, including Rico and Condon in their handling of

Barboza and Flemmi as top informants; and failed to investigate for purposes of prosecution the circumstances of Deegan's death.

5.      On January 5, 2001, Judge Margaret Hinkle of the Suffolk County Superior Court issued an opinion in the matter of Peter Limone's Request for New Trial (Commonwealth of Massachusetts v. Peter Limone, Suffolk Superior Court Crim. No. 32367, 69-70) that disclosed, for the first time, the FBI's role and involvement in the murder of Edward Deegan and others.

## II.   PARTIES

6.      Richard P. Deegan in his capacity as administrator of the Estate of Edward Deegan brings this action on behalf of the Estate. The Estate is being probated in Middlesex County Probate Court, Commonwealth of Massachusetts. The administrator is duly qualified and duly authorized to maintain this action.

7.      The United States of America ("United States") is a defendant in this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. arising from the acts and/or omissions of employees and agents of the Federal Bureau of Investigation ("FBI"), an agency of defendant, and a party defendant for claims arising from Chapter 229 of the Massachusetts General Laws in which individual agents of the FBI are named as defendants for negligent or wrongful acts or omissions while acting within the scope of their office or employment by the FBI, a federal agency pursuant to 28 U.S.C. § 2671 et seq.

8.      Defendant Estate of H. Paul Rico ("Rico") is the Estate probated on behalf of the deceased H. Paul Rico who was a resident of Miami, Florida. During all times

3

alleged in this complaint, Rico was acting within the scope of his office or employment as a Special Agent of the FBI. Rico is sued individually and in his official capacity.

9.    Defendant Dennis Condon ("Condon") resides in a location presently unknown. During all times alleged in this Complaint, Condon was acting within the scope of his office or employment as a Special Agent of the FBI. Condon is sued individually and in his official capacity. In early1964, through 1965 and thereafter Condon was an FBI Special Agent. Condon was assigned to the FBI's Boston field office.

10.    Defendant Vincent James Flemmi ("Flemmi") is a resident of Boston, Massachusetts. In the early 1960's and well before October 1964, Rico and Condon developed relationships with James Vincent Flemmi as a confidential informant for the FBI.

11.    Defendant Joseph Barboza ("Barboza") resides in a location currently unknown to the Plaintiff. Beginning in the mid 1960's and well before October 1964, Rico and Condon relied upon Barboza for information as a confidential informant as well as a cooperating witness in the investigation surrounding Deegan's murder.

12.    John Does Nos. 1 through 25 are persons presently unknown to the Plaintiff who, violated the Plaintiff's rights as guaranteed by the United States Constitution  and Massachusetts law and/or conspired with others to do so. The John Does may be private individuals, state officials or agents of the United States Government who acted in concert with the federal officials named in this Complaint to deny Plaintiff its rights guaranteed by the United States Constitution and Massachusetts law. Based on information and belief, the John Does and other persons, both known and

4

unknown, actively participated in, ratified, or otherwise implemented the conspiracy alleged herein. Plaintiff believes that the conduct and statements of these individuals in furtherance of the conspiracy alleged herein are admissible against the named Defendants, but further states that it may request leave to amend the Complaint as appropriate.

## III.    JURISDICTION AND VENUE

13.    This case is brought to recover damages from certain federal Defendants caused to the Plaintiff, while those Defendants were acting under color of law of the United States of America, by depriving the Plaintiff of its rights guaranteed by the United States Constitution. These causes of action are provided for by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

14.    The jurisdiction of this Court is founded upon 28 U.S.C. § 1346, because the Complaint states causes of action under the Federal Tort Claim Act, 28 U.S.C. § 2671 et seq.

15.    This case is also brought to recover damages under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., alleging that Deegan's death was caused by the negligent or wrongful acts or omissions of certain employees of the United States Government while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the Commonwealth of Massachusetts.

16.    The jurisdiction of this Court is founded upon 28 U.S.C. § 1367, because the Complaint states causes of action under the Federal Tort Claim Act, 28 U.S.C. § 2671, et seq.

17.     The jurisdiction of this Court is founded upon 28 U.S.C. § 1367, because the Complaint states causes of action so related to claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

18.     On January 27, 2003, the Plaintiff duly presented Notice of Tort Claims, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., 28 U.S.C. § 2401, 28 C.F.R. § 14.1, et seq., giving notice of Deegan's injuries and wrongful death caused by the negligent or wrongful acts or omissions of certain employees of the United States Government while acting within the scope of their office or employment, under circumstance where the United States, if a private person, would be liable to the Plaintiffs in accordance with the laws of the Commonwealth of Massachusetts.

19.     On or about March 15, 2004, the claims referenced in the previous paragraph were denied.

20.     Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of the Plaintiff occurred in the District of Massachusetts.

## IV.     **THE ESTATE OF EDWARD DEEGAN**

21.     Edward Deegan was a resident of Malden, Massachusetts. At the time of death, Deegan was 36 years old.

22.     In the early morning hours of March 12, 1965, Edward Deegan was murdered in Chelsea, Massachusetts.

23.     Edward Deegan is survived by his brother, Richard P. Deegan, and his sister, Rita E. Sylvester.

24.     On or about March 19, 2002, the Probate and Family Court Department of the County of Middlesex, Commonwealth of Massachusetts, appointed Richard P. Deegan administrator of the Estate of Edward Deegan.

25.     Edward Deegan was a citizen of the United States of America and as such he and his Estate are entitled to the protection of the Constitution and the laws of the United States of America.

26.     At all times relevant to the events herein, Defendants Rico and Condon were acting under color of the laws of the United States of America, and/or were conspiring with or acting in concert with, persons who were acting under color of laws of the United States of America.

27.     Other than through the relief sought in this Complaint, the Estate has no effective means to seek redress for the violations of Deegan's rights and the Estate's rights under the United States Constitution which are alleged herein.

28.     In the facts which give rise to the present lawsuit there are no "special factors counseling hesitation", Bivens, 403 U.S. at 397, in formulating a remedy for Deegan and his Estate.

## V.        RELATIONSHIP BETWEEN DEFENDANTS RICO AND FLEMMI

29.     In the early 1960's and well before October 1964, FBI Special Agent H. Paul Rico and FBI Special Agent Dennis Condon targeted Flemmi for development as a top echelon informant – the highest status a source can achieve in the FBI. At that time, a top echelon informant was defined as an individual who "could provide a continuous flow of quality criminal intelligence information regarding the leaders of organized crime."

30.    Since the early 1960's, the development of top echelon informants has been a very high priority for the FBI. The successful development of informants generally, and therefore top echelon informants particularly, has also been regarded as an important achievement for an FBI agent, with the potential to affect significantly the progress of that agent's career. Thus, it is to the agent's benefit to develop top echelon informants.

31.    Rico and Condon knew that all information received from informants is recorded on an FBI Form 209. During all times alleged herein, Rico and Condon failed to conform to what the FBI policies and procedures required concerning the handling of top echelon informants.

32.    Rico and Condon sought to realize Flemmi's potential as a source of information by not treating him like a criminal who should be used with caution to obtain valuable information. Rather, Rico and Condon suggested that they and Flemmi were allies in a common cause.

33.    Rico and Condon promised Flemmi protection from the FBI if Flemmi would become an FBI informant.

34.    Flemmi was receptive to the alliance with the FBI that Rico proposed. The arrangement offered him an opportunity to use the FBI to disable his enemies, enhance his safety and, with the competition diminished and the protection of the FBI, make his own criminal activities more profitable.

35.    Agents of the FBI, including Rico and Condon, engaged in a pattern of placing false statements in Flemmi's informant file in order to divert attention from his crimes and/or FBI misconduct.

36.     Rico had an incentive not to document accurately or completely information about Flemmi's possible involvement in serious crimes because he might lose the authority to utilize Flemmi as an informant if Rico's superiors decided that Flemmi deserved to be targeted for continued criminal prosecution rather than used as a source.

37.     Rico and Condon's knowledge as early as May 22, 1964, that Flemmi had stated that "all he wants to do is kill people" and that in October 1964, Flemmi had stated that it was his aspiration to become the number one "hit man" in the Boston area did not deter them and the FBI from making Flemmi a top informant.

38.     Rico and Condon also knew that Flemmi was a murderer and continued to use him as an informant and to protect his criminal activities.

39.     Flemmi's informant file was closed on September 15, 1965. The file had notations of times he was used as an informant after he was implicated in the murder of Deegan but never prosecuted.

## VII.     THE DEVELOPMENT OF BARBOZA AS A COOPERATING WITNESS

40.     After the murder of Deegan, Rico and Condon developed Joseph Barboza, who was involved in the murder, as a cooperating witness.

41.     At the initial meeting, Barboza was clear that he was not going to provide information that would implicate Flemmi. Despite this statement, Rico and Condon presented Barboza as a witness at the trial that convicted six innocent men.

42.     The testimony presented clearly contradicted the compelling body of evidence law enforcement collected in the murder investigation. No affirmative steps

were taken to prevent Barboza from committing perjury. Further, Barboza was never charged with the murder despite evidence of his involvement and his perjury at the trial.

43.    Rico and Condon knew from the beginning that Barboza and Flemmi were involved in the murder but continued to allow Barboza to withhold any information regarding Flemmi's involvement.

## VIII.    AN UNHOLLY ALLIANCE:  THE BOSTON OFFICE OF THE FBI AND BARBOZA AND FLEMMI

### A.    The Federal Bureau of Investigation

44.    The Federal Bureau of Investigation is a federal law enforcement agency statutorily empowered by the United States Congress to enforce and investigate certain alleged violations of the United States Criminal Code. The FBI is part of the United States Department of Justice and formally subject to oversight and direction by the United States Attorney General.

45.    The FBI is broken down into field offices. One of the field offices is the Boston field office.

46.    Among the offenses that the FBI is empowered to investigate are crimes involving racketeering, 18 U.S.C. § 1962, et seq.; bribery, 18 U.S.C. § 201; loan sharking, 18 U.S.C. § 891; gambling, 18 U.S.C. § 1951; tampering with a witness, victim or informant, 18 U.S.C. § 1512; and retaliating against a witness, victim or informant, 18 U.S.C, § 1513.

47.    The FBI has established certain core values that it claims "need to be preserved and defended by the FBI in performing its statutory missions. Those values are:  rigorous obedience to the Constitution of the United States; respect for the dignity of

all those we protect; compassion; fairness; and uncompromising personal and institutional integrity."

48.     The FBI mission further states: "[r]espect for the dignity of all whom we protect reminds us to wield law enforcement powers with restraint and to recognize the natural human tendency to be corrupted by power and to become callous in its exercise. Fairness and compassion insure that we treat everyone with the highest regard for the constitution, civil and human rights. Personal and institutional integrity reinforce each other and are owed to the Nation in exchange for the sacred trust and great authority conferred upon us."

49.     The FBI was statutorily empowered to protect persons like Edward Deegan from being victimized by clandestine criminal organizations, and to investigate those responsible for his death.

50.     The FBI is an agency within the meaning of 28 U.S.C. § 2671 et seq.

B.     Barboza and Flemmi

51.     At all times material to this Complaint, Barboza and Flemmi were involved in clandestine criminal organizations that engaged in multiple crimes, including murder, bribery, extortion, loan sharking, and illegal gambling in greater Boston, Massachusetts. All of these crimes were subject to the jurisdictional authority of the FBI.

52.     As previously set forth in this Complaint, at all times materials to this Complaint, Barboza and Flemmi were involved with Raymond Patriarca and were vicious hardened criminals.

53.     In the early 1960's, Rico and Condon were utilizing Flemmi as a confidential informant for the FBI. At all times material to this Complaint, Rico was the

FBI agent contact assigned to receive information from Flemmi, otherwise known as their handler.

54.     After the murder of Deegan, Rico and Condon developed Barboza as a cooperating witness who provided false testimony and protected Flemmi from prosecution for the murder.

55.     The Special Agents of the FBI working out of the Boston office, including Rico and Condon, knew that despite their cooperation with the FBI, Barboza and Flemmi were still engaged in serious criminal wrongdoing during all times pertinent to this Complaint.

56.     During all times relevant to this case, in order to protect Barboza and Flemmi from prosecution and to further their criminal activities, agents of the FBI failed to report Barboza and Flemmi's ongoing criminal activities including murder, loan sharking, burglary, as well as any information regarding their involvement in the Deegan murder.

57.     During all times relevant to this Complaint, agents of the FBI, in order to protect Barboza and Flemmi, failed to properly index information concerning the criminal activities of Barboza and Flemmi and place that information in the investigative files referencing their names.

58.     Agents of the FBI made insidious efforts to cultivate in Barboza and Flemmi the sense that Barboza and Flemmi were their friends, consultants, and allies rather than criminals who were also informants of criminal activity.

## X.    THE DEFENDANT FBI AGENTS' VIOLATION OF FBI RULES AND REGULATIONS PERTAINING TO FBI INFORMANTS

59.     Prior to and after Deegan's murder as set forth in this Complaint, Defendants Barboza and Flemmi, while providing information to the FBI during a period from 1964 to 1968, both separately and jointly were engaged in a number of murders and other violent criminal acts for which they were not prosecuted.

60.     The FBI had the Manual of Instructions regarding the handling of informants. Under the FBI's Manual of Instructions, it was mandatory that agents of the FBI exercise constant care "to avoid any disclosure to anyone which might permit identification of a criminal informant or even cast suspicion on a criminal informant."

61.     The Manual provided that "[u]nder no circumstances shall the FBI take any action to conceal a crime by one of its informants." As set forth in this Complaint, this mandatory directive was regularly disregarded concerning Barboza and Flemmi, by Rico and Condon.

62.     Pursuant to the Manual, if the FBI learned that one of its informants had violated the law in furtherance of his assistance to the FBI, it was expected that "ordinarily" the FBI would promptly inform the appropriate law enforcement or prosecutive authorities, and the FBI would decide whether the continued use of the informant was justified.

63.     If there were exceptional circumstances that caused the FBI to believe that such notification was "inadvisable", the FBI had a mandatory duty to inform the Department of Justice. The Department of Justice would then decide whether law enforcement or prospective authorities should be notified and whether the FBI should continue to use the informant. As set forth in this Complaint, this mandatory directive was regularly disregarded concerning Flemmi and Barboza by Rico and Condon.

64.     The FBI headquarters in Washington, D.C. failed to effectively supervise the implementation of the FBI Manual. While FBI headquarters periodically audited the Boston office's informant files, no deficiencies with regard to the handling of Barboza or Flemmi were noted, despite the fact that those files were replete with information indicating that Barboza and Flemmi were involved in serious criminal activity that had not been authorized in writing, investigated by the FBI, reported to other law enforcement agencies, or reported to the Assistant Attorney General for the Criminal Division of the Department of Justice.

65.     Despite the FBI's knowledge of Barboza's and Flemmi's participation in serious acts of violence or other serious crimes, the Boston Office of the FBI, while Rico and Condon were Special Agents, violated the dictates of the FBI Manual.

## XI.    THE MURDER OF EDWARD DEEGAN

66.     During the early morning hours of March 12, 1965, Edward Deegan was murdered in Chelsea, Massachusetts, in "gang land fashion". Despite the FBI's knowledge of the murder and their duty to warn, they took no affirmative steps to warn Deegan or to stop the murder from happening.

67.     Documents produced by the United States Department of Justice and made public on or about January 31, 2001, in relation to litigation in the matter of the murder convictions of Peter Limone and John Salvati establish that Deegan was murdered by Vincent James Flemmi and others including Joseph Barboza, Ray French, Joseph Romeo Martin and Ronnie Cassesso.

68.     As early as 1964, the FBI began receiving information that James Flemmi advised a top informant that all he wants to do is kill people and he feels he can be the top

14

hit man in Boston and intends to be. They were also informed that Barboza and Flemmi were close associates.

70.    On March 10, 1965, two days prior to the murder, Rico and the FBI received information from an informant that a "hit" had been ordered on Deegan and that a close associate was going to set Deegan up. The informant received the information from Vincent James Flemmi who also advised that he planned to arrange an alibi for "the next few evenings in case he is suspected of killing Deegan."

71.    As early as October 19, 1964, the FBI was on notice of problems between Deegan and Flemmi and the fact that Flemmi wanted to kill Deegan. There are additional references to an informant meeting with the FBI regarding Flemmi's desire to kill Deegan.

## XII.    THE COVER UP:  AFTER THE MURDER OF EDWARD DEEGAN THE DEFENDANT FBI AGENTS, IN BREACH OF THEIR DUTIES AND IN VIOLATION OF MANDATORY GUIDELINES AND RULES OF LAW CONTINUED TO PROTECT BARBOZA AND FLEMMI, AND FAILED TO INVESTIGATE THE CIRCUMSTANCES OF DEEGAN'S MURDER ALL TO THE DETRIMENT OF THE ESTATE AND THE PLAINTIFFS.

72.    On March 13, 1965, the FBI was informed of Flemmi's responsibility for Deegan's murder.

73.    On March 19, 1965 the FBI was notified via airtel that Deegan was murdered on March 12, 1965, in gang land fashion and that Barboza and Flemmi among others were responsible for the killing.

74.    On or about April 6, 1965, an FBI memo stated that on March 23, 1965, a confidential informant provided information about Barboza's and Flemmi's connection to Deegan's murder.

75.    Vincent James Flemmi's informant file, which was assigned to Rico, reflects that, prior to Deegan's murder, Flemmi was developed as an informant and that the FBI even after it knew of his responsibility for the murder, contacted him. Specifically, Rico directly contacted Flemmi on April 5, 1965; May 10, 1965; July 22, 1965; and July 27, 1965.

76.    Flemmi was never charged with the Deegan murder.

77.    Barboza was recruited by Rico and Condon as a cooperating witness in the Deegan murder even though he had advised Rico and Condon that he was not going to provide them with any information that would implicate Flemmi.

78.    The testimony of Barboza developed by Rico and Condon in the Deegan murder trial was in direct contradiction to the evidence collected by law enforcement. The testimony was false and in no way implicated Barboza or Flemmi. They were not charged with the murder and instead were both protected from prosecution.

79.    Despite the FBI's responsibility to investigate, the Boston office of the FBI failed to conduct a good faith investigation of Deegan's murder.

80.    The Boston office of the FBI, through the Defendants named herein and others, failed to investigate Deegan's death because they did not want to disrupt their relationship with Barboza and Flemmi and the benefits that the FBI, the United States and the individual agents received as a result of that relationship. Moreover, the agents of the FBI were fulfilling their part of their bargain with Flemmi and Barboza to protect them, and to avoid embarrassment of the FBI.

81.     The FBI did not investigate Flemmi or Barboza because to do so would have been to disclose them as informants or, in the alternative, would have required that they be disclosed as informants.

82.     Not until the public disclosure of the FBI's failure to investigate Deegan's death came to public attention in early 2001, did the FBI undertake its statutory duty to vigorously investigate the circumstances surrounding Deegan's murder.

### Count 1 –Civil Conspiracy – Defendants United States, Rico and Condon

83.     The plaintiff incorporates the facts alleged in paragraphs 1-82 and repeats and recites all previous allegations as if fully set forth herein.

84.     From in or about 1964 and continuing thereafter up to 1970 in the District of Massachusetts and elsewhere, defendants Rico and Condon, while acting within the course or scope of their office or employment with the FBI, an agency of the defendant United States, together with defendants Barboza and Flemmi combined, conspired and agreed to protect Barboza, Flemmi, and their associates from arrest and prosecution for their criminal activities including, but not limited to murder, loan sharking, illegal gambling, extortion and bribery in exchange for defendants Barboza's and Flemmi's agreement to provide information pertaining to the criminal activities of others to agents of the FBI.

85.     It was the object of the conspiracy to protect defendants Barboza's and Flemmi from arrest and prosecution in order to maintain their roles as informants, providing information to the FBI. In furtherance thereof, defendants Rico and Condon, among other things: (a) deflected and squelched prosecutions and criminal investigations about Barboza and Flemmi's crimes; (b) improperly secured false testimony of Barboza in the Deegan murder trial; (c) improperly preserved Barboza's and Flemmi's status as FBI informants

17

through the filing of misleading official reports and failed to report and record allegations of their crimes in official FBI documents; (d) improperly failed to supervise and review Barboza's and Flemmi's criminal activities; and (e) improperly lied to others concerning the criminal activities of Barboza and Flemmi.

86.    In part, the defendants Rico and Condon benefited from the conspiracy alleged herein by, among other ways: (a) increased prestige and promotions for the individual agents and the Boston field office of the FBI, in general; (b) receiving gifts of money and other things of value from Barboza and Flemmi; (c) concealing from the public and courts that the FBI Manual Guidelines regulating the handling of informants had been systematically ignored; (d) concealing from the public and courts that agents of the FBI had violated the laws of the United States of America, thus saving the defendant United States from the adverse publicity and harm to reputation associated with the indictment of one or more of its agents or the public revelation of the conduct alleged within this Complaint; (e) concealing from the public, courts, and litigants the conduct alleged in this complaint in order to prevent persons from challenging the legality of their convictions; and (f) concealing from the public, courts and litigants the conduct alleged in this complaint, thus precluding persons who had been unlawfully imprisoned or harmed, including your plaintiff, from making claims against the defendant United States.

87.    As part of the conspiracy and in furtherance thereof, in or about October and November 1964, as well as in February and early March 1965, the FBI, Rico and Condon learned of Flemmi's desire and intention to kill Deegan.

88.    On or about March 12, 1965, Deegan was set up, tortured and murdered by Barboza, Flemmi, and others.

89.     The defendant United States, by and through defendants Rico and Condon, and others failed to undertake any serious investigation of Deegan's murder.

90.     The defendant United States and its agency, the Federal Bureau of Investigation, negligently continued to utilize Barboza as a cooperating witness and Flemmi as an informant; negligently failed to control the criminal activities of Barboza and Flemmi, negligently failed to enforce the FBI Manual Guidelines governing informants, including Barboza and Flemmi; negligently and in violation of the regulations and policies of the defendant United States failed to inform the appropriate law enforcement or prosecutive authorities of the criminal activities of Barboza and Flemmi; negligently failed to properly supervise federal agents, including Connolly and Morris, in their handling of Barboza and Flemmi; negligently continued to allow Rico to remain Flemmi's "handler" when it was known or should have been known that he should have been removed from that position; negligently failed to warn and protect Deegan after they were aware of his impending death; and negligently failed to investigate for the purpose of prosecution the circumstances of Deegan's disappearance and death.

91.     As a result of these wrongful acts by agents and employees of the defendant United States, events occurred that a reasonable, prudent person would have foreseen in light of the circumstances set forth herein, including the attack, torture and wrongful death of Edward Deegan. The tortious conduct of such employees was a material element and proximate cause in bringing about Deegan's attack, torture and death.

92.     By reason of the negligence of defendants Rico and Condon, and United States, the next of kin has been deprived of compensation for the loss of reasonably expected net income, services, protection, care, assistance, society, companionship, comfort,

guidance, counsel and advice and reasonable funeral and burial expenses as well as other damages pursuant to MGL Ch. 229, § 2.

## Count II -- MGL Ch. 229 § 6 – Conscious Suffering -- Defendants United States, Rico, and Condon

93.    The plaintiff incorporate the facts alleged in paragraph 1-92 and repeats and recites all previous allegations as if fully set forth herein.

94.    As a direct and proximate result of the negligence of defendant United States, by and through defendants Rico and Condon, while acting within the course and scope of their office or employment by the FBI, alleged in the previous Count of this Compliant, Deegan suffered great pain of body and anguish of mind in that he was attacked, tortured and wrongfully killed.

95.    This Count of the Compliant is for conscious suffering and is being brought for the benefit of the Estate of Edward Deegan pursuant to MGL Ch 229 § 6.

## Count III – MGL Ch. 299 § 2 – Negligence – Defendants United States, Rico and Condon

96.    The plaintiff incorporate the facts alleged in Paragraphs 1-95 and repeats and recites all previous allegations as if fully set forth herein.

97.    The defendants Rico and Condon, while acting within the course and scope of their office or employment by the FBI, an agency of the defendant United States: (a) knew or should have known that prior to the time Deegan was killed, Barboza and Flemmi had engaged in a history of criminal activity including assault, attempted murder and murder; (b) knew or should have known that prior to the time Deegan was killed, informants willing to cooperate against Barboza and Flemmi had been intimidated, tampered with or