murdered in violation of 18 U.S.C. §§ 1512, 1513 and other provisions of state and federal law; (c) knew of should have known they had a duty to investigate the prior murders caused by Barboza and Flemmi; (d) knew or should have known they had a duty to disclose Flemmi's and Barboza's violent criminal activities to law enforcement agencies with jurisdiction over their crimes and/or report these activities to the Department of Justice and/or terminate Barboza's status as a cooperating witness and Flemmi's status as confidential informants; (e) knew or should have known that they had a duty to follow and enforce the FBI Manual Guidelines regarding the handling of informants and (f) knew or should have known that their failure to comply with their duties alleged herein would place the life of Deegan in grave danger.

  98. The United States and its agency, the Federal Bureau of Investigation, negligently continued to utilize Flemmi as a top informant; negligently failed to control the criminal activities of Barboza and Flemmi, negligently failed to enforce the FBI Manual Guidelines governing informants, including Flemmi; negligently and in violation of the regulations and policies of the defendant United States failed to inform the appropriate law enforcement or prospective authorities of the criminal activities of Barboza and Flemmi; negligently failed to properly supervise federal agents, including Condon and Rico, in their handling of Barboza and Flemmi; negligently continued to allow Rico to remain Flemmi's "handler" when it was known or should have been known that he should have been removed from that position; negligently failed to warn and protect Deegan after they were informed of his impending death; and negligently failed to warn and protect Deegan after it became known that Barboza and Flemmi had specifically planned the place date, and time that Deegan was to be murdered.

99. As a result of these wrongful acts and omissions by agents and employees of the defendant United States, events occurred that a reasonable, prudent person would have foreseen in light of the circumstances set forth herein, including the attack, torture and wrongful death of Edward Deegan. The tortious conduct of such employees was a material element and proximate cause in bringing about Deegan's attack, torture and death.

100. By reason of the negligence of defendants Rico, Condon and United States, the next of kin has been deprived of compensation for the loss of reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice and reasonable funeral and burial expenses, as well as other damages pursuant to MGL Ch. 229 § 2.

### Count IV – MGL Ch. 299 § 2 – Supervisory Liability – Defendants United States

101. The Plaintiff incorporates the facts alleged in paragraphs 1-100 and repeats and recites all previous allegations as if fully set forth herein.

102. At the time of Deegan's murder, defendant United States was the supervising agency of Rico and Condon.

103. Defendant United States while acting in the course and scope of its capacity as an agency United States, had a duty to ensure that their subordinates Rico and Condon followed the laws of the United States, acted in conformity therewith, that both Rico and Condon and the Boston Field Office of the FBI were in compliance with the FBI Manual Guidelines concerning the handling of informants, including Barboza and Flemmi.

104. By the time of Deegan's murder in 1965, defendant United States: (a) knew or should have known that Barboza and Flemmi had engaged in a history of violent criminal activity, including assault, attempted murder and murder; (b) knew or should have known

that prior to the time Deegan was killed, informants provided information that Flemmi and Barboza had planned the murder of Deegan; (c) knew or should have known that Rico was the FBI "handler" for Barboza and Flemmi; (d) knew or should have known that Rico knew that Bulger and Flemmi were engaged in violent criminal activities while serving as FBI informants and cooperating witnesses; and (e) knew or should have known they had a responsibility to inform appropriate law enforcement or prosecutive authorities of the criminal activity of Barboza and Flemmi.

105. Rico and Condon, while they served as a Special Agent of the FBI, using confidential information that they received from FBI and other law enforcement sources, protected Barboza and Flemmi from prosecution for the murder of Deegan and others.

106. During their tenure, Rico and Condon, while they served as a Special Agent of the FBI, knowingly omitted material information from official FBI documents regarding Barboza and Flemmi.

107. Rico and Condon, while they served as a Special Agents of the FBI, in order to protect Barboza and Flemmi from prosecution and to further their criminal activities, in knowing and willful violation of their responsibilities as an FBI agents, endeavored to preserve Barboza's status as a cooperating witness and Flemmi's status as confidential informant by failing to report information relating to Barboza and Flemmi which was material to the investigation of criminal activity in the Boston area.

108. During the tenures of Rico and Condon, the FBI failed to undertake any good faith investigation of the role of Barboza, Flemmi and others in the murder of Deegan.

109. Defendant United States FBI, while acting within the course and scope of their office or employment, an agency of the defendant United States, breached their duties

23

by failing to properly supervise Rico, Condon and others and failing to ensure that Rico, Condon and others followed FBI Manual Guidelines concerning the handling of informants thereby placing the lives of others, including Deegan, at great risk.

110.    As a result of these wrongful acts by agents and employees of the defendant United States, events occurred that a reasonable, prudent person would have foreseen in light of the circumstances set forth herein, including the attack, torture and wrongful death of Edward Deegan. The tortious conduct of such employees was a material element and proximate cause in bringing about Deegan's attack, torture and death.

111.    By reason of the negligence of defendants United States, the next of kin has been deprived of compensation for the loss of reasonably expected net income, services, protection, care assistance, society, companionship, comfort, guidance, counsel and advice and reasonable funeral and burial expenses as well as other damages pursuant to MGL Ch. 229 § 2.

## Count V – MGL Ch. 229 § 2- Wrongful Death – Willful – Defendants Barboza and and Flemmi

112.    The plaintiff incorporates the facts alleged in paragraph 1-111 and repeats and recites all previous allegations as if fully set forth herein.

113.    On or about March 12, 1965, defendants Barboza, Flemmi and others willfully, wantonly, maliciously, intentionally and unlawfully killed Edward Deegan.

114.    Barboza, Flemmi, and others willfully, wantonly, maliciously, intentionally and unlawfully killed Edward Deegan by aiding and abetting one another in attacking, torturing and causing the wrongful death Deegan.

115.    By reason of Barboza's, Flemmi's and other's willful, malicious and wrongful acts, the next of kin have been deprived of compensation for the loss of reasonably

24

expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice and reasonable funeral and burial expenses as well as other damages pursuant to MGL Ch. 229 § 2.

116.    By reason of Barboza's, Flemmi's and others malicious, willful, wanton and reckless conduct, the plaintiff is entitled to an award of punitive damages pursuant to MGL Ch. 229 § 2.

### Count VI – MGL Ch. 229 § 6 – Conscious Suffering – Defendants Barboza and Flemmi

117.    The plaintiff incorporates the facts alleged in paragraph 1-116 and repeats and recites all previous allegations as if fully set forth herein.

118.    As a direct and proximate result of the willful, malicious and wrongful acts of defendants Barboza, Flemmi and others alleged in the previous Count of this Compliant, Deegan suffered great pain of body and anguish of mind in that he was attacked, assaulted and wrongfully killed.

119.    This Count of the Compliant is for conscious suffering and is being brought for the benefit of the Estate of Edward Deegan pursuant to MGL Ch 229 § 6.

### COUNT VII -- Bivens – Fourth Amendment – Defendants Rico and Condon

120.    The plaintiff incorporates the facts alleged in paragraph 1-119 and repeats and recites all previous allegations as if fully set forth herein.

121.    Defendants Rico and Condon, while acting under color of law of the United States of America, knowingly, intentionally, and with actual malice, denied Edward Deegan his clearly established right to be secure in his person against unreasonable seizures as guaranteed by the Fourth Amendment to the United States Constitution.

122. These denials were accomplished in that defendants Rico and Condon, to utilize Flemmi as top informant; failed to control the criminal activities of Barboza and Flemmi; failed to enforce the FBI Manual Guidelines governing informants; in violation of the regulations and policy of the United States, failed to inform the appropriate law enforcement or prosecutive authorities of the criminal activities of Barboza and Flemmi; continued to allow Rico to remain Flemmi's "handler" when it was known or should have been known that he should have been removed from that position; and failed to warn and protect Deegan of his impending death.

123. These actions violated Deegan's clearly established right to be secure in his person from unreasonable seizures, guaranteed by the Fourth Amendment to the United States Constitution, that is, force which was, considering all the facts and circumstances of the case, unreasonable in that it was not intended to achieve any lawful purpose.

124. As a direct, proximate, and foreseeable result of the actions of defendants Rico and Condon, Deegan was actually denied his constitutional rights pursuant to the Fourth Amendment as alleged above to the United States Constitution, and suffered extreme and severe fright, shock, fear, horror, emotional distress and wrongful death.

125. The actions of defendants Rico and Condon, alleged above, were an extreme deviation from reasonable standards of conduct, undertaken intentionally, with actual malice, and/or reckless disregard for their likely consequences. As a result, the plaintiff is entitled to an award of punitive damages.

## COUNT VIII- Bivens -- Substantive Fifth Amendment – Defendants Rico and Condon

126.     The plaintiff incorporates the facts alleged in paragraph 1-125 and repeats and recites all previous allegations as if fully set forth herein.

127.     Defendants Rico and Condon, while acting under color of law of the United States, knowingly, intentionally, and with actual malice, denied Edward Deegan his clearly established substantive due process right not to be deprived of life and liberty without due process of law, guaranteed by the Fifth Amendment to the United States Constitution.

128.     These denials were accomplished in that defendants Rico and Condon, continued to utilize Flemmi as a top informant; failed to control the criminal activities of Barboza and Flemmi; failed to enforce the FBI Manual Guidelines governing informants; in violation of the regulations and policy of the United States failed to inform the appropriate law enforcement or prosecutive authorities of the criminal activities of Barboza and Flemmi; continued to allow Rico to remain Flemmi's "handler" when it was known or should have been known that he should have been removed from that position; and failed to warn and protect Deegan from impending death after having been informed of the place, date and time of the murder.

129.     These actions violated Deegan's clearly established substantive due process rights not to be deprived of life or liberty without due process of law, guaranteed by the Fifth Amendment to the United States Constitution because the force used was arbitrary and/or reckless and highly likely to cause harm, and shocks the conscience.

130.     As a direct, proximate, and foreseeable result of the actions of defendants Rico and Condon, Deegan was actually denied his constitutional rights pursuant to the Fifth

Amendment as alleged above to the United States Constitution, and suffered extreme and severe fright, shock, fear, horror, emotional distress and wrongful death.

131.    The actions of defendants Rico and Condon, alleged above, were an extreme deviation from reasonable standards of conduct, undertaken intentionally, with actual malice, and/or reckless disregard for their likely consequences. As a result, the plaintiff is entitled to an award of punitive damages.

## COUNT IX – Bivens – Fourth and Fifth Amendments - Failure To Supervise – Defendant United States

132.    The plaintiff incorporates the facts alleged in paragraphs 1-131 repeats and recites all previous allegations as if fully set forth herein.

133.    Defendant United States, while acting under color of law, knowingly, intentionally, and with actual malice, denied Edward Deegan his clearly established right to be secure in his person from unreasonable seizures as guaranteed by the Fourth Amendment to the United States Constitution, and/or his substantive due process rights not to deprived of liberty and life without due process of law, guaranteed by the Fifth Amendment to the United States Constitution, by breaching its duty to supervise Rico and Condon through their own acts or omissions causing Deegan to be attacked, tortured and wrongfully killed by Barboza, Flemmi, and others.

134.    Defendant United States had a duty to ensure that Rico and Condon and other agents followed the law, acted in conformity therewith and that both Rico and Condon and the Boston Field Office of the FBI were in Compliance with the FBI Manual Guidelines concerning the handling of informants.

135.	By the time of Deegan's murder in 1965, defendants Rico and Condon: (a) knew or should have known that Barboza and Flemmi had engaged in a history of violent criminal activity, including assault, attempted murder and murder; (b) knew or should have known that prior to the time Deegan was killed an informant provided information that Flemmi, and Barboza had planned the murder of Deegan; (c) knew or should have known that Rico was the FBI "handler" for Flemmi; (d) knew or should have known that Rico knew that Barboza and Flemmi and that Bulger and Flemmi were engaged in violent criminal activities while serving as FBI informants and cooperating witnesses; and (e) knew or should have known they had a responsibility to inform appropriate law enforcement or prosecutive authorities of the criminal activity of Barboza and Flemmi.

136.	Rico and Condon while they served as Special Agents of the FBI, using confidential information that he received from FBI and other law enforcement sources, protected Barboza and Flemmi from prosecution for the murder of Deegan and others as well as from prosecution for ongoing criminal activities.

137.	During their tenure Rico and Condon, while they served as a Special Agents of the FBI, knowingly omitted material information from official FBI documents regarding Barboza and Flemmi.

138.	Rico and Condon, while they served as a Special Agents of the FBI, in order to protect Barboza and Flemmi from prosecution and to further their criminal activities, in knowing and willful violation of their responsibilities as an FBI agent, endeavored to preserve Barboza's status as a cooperating witness and Flemmi's status as confidential informant by failing to report information relating to Barboza and Flemmi which was material to the investigation of criminal activity in the Boston area.

139.    During the tenure of Rico and Condon, the FBI failed to undertake any good faith investigation of the role of Barboza, Flemmi and others in the murder of Deegan.

140.    Defendant United States FBI, while acting within the course and scope of their office or employment, an agency of the defendant United States, breached their duties by failing to properly supervise Rico and Condon and others and failing to ensure that Rico, Condon and others followed FBI Manual Guidelines concerning the handling of informants thereby placing the lives of others, including Deegan, at great risk.

141.    Defendants United States through their own acts or omissions encouraged, condoned, acquiesced and/or acted with gross negligence or deliberate indifference to Rico and Condon's actions in that they ignored: that Barboza and Flemmi had engaged in a history of violent criminal activity, including assault, attempted murder and murder; their duty to inform individuals of impending harm; their duty to properly supervise Rico and Condon's relationship with Barboza and Flemmi; and their mandatory duty to ensure that Rico, Barboza and other agents within the Boston Field office of the FBI were in compliance with the FBI Manual Guidelines concerning the handling of informants.

142.    As a direct, proximate, and foreseeable result of defendant United States actions, Deegan was actually denied his clearly established constitutional rights pursuant to the Fourth and Fifth Amendments to the United States Constitution, alleged above, and suffered extreme and severe fright, shock, fear, horror, emotional distress and wrongful death.

143.    The actions of defendant, United States, alleged above, were an extreme deviation from reasonable standards of conduct, undertaken intentionally, with actual

malice, and/or reckless disregard for their likely consequences. As a result, the plaintiff is entitled to an award of punitive damages.

### Count X –Bivens Conspiracy - Fourth And Fifth Amendments – Defendants Rico and Condon

144.   The plaintiff incorporates the facts alleged in paragraphs 1-143 and repeats and recites all previous allegations as if fully set forth herein.

145.   From in or about 1964 and continuing thereafter up to 1970 in the District Court of Massachusetts and elsewhere, defendants Rico and Condon while acting within the course and scope of their office or employment with the FBI, an agency of the defendant United States, together with defendants Barboza, Flemmi and their associates from arrest and prosecution for their criminal activities including, but not limited to, murder, loan sharking, illegal gambling, extortion and bribery, in exchange for defendants Barboza and Flemmi's agreement to provide information pertaining to the criminal activities of others to agents of the FBI.

146.   It was the object of the conspiracy to protect defendants Barboza and Flemmi from arrest and prosecution in order to maintain their roles as informants, providing information to the FBI. In furtherance thereof, defendants Rico and Condon, among other things: (a) deflected and squelched prosecutions and criminal investigations about Barboza and Flemmi's crimes; (b) improperly secured false testimony of Barboza in the Deegan murder trial; (c) improperly preserved Barboza's and Flemmi's status as FBI informants through the filing of misleading official reports and failed to report and record allegations of their crimes in official FBI documents; (d) improperly failed to supervise and review Barboza's and Flemmi's criminal activities; and (e) improperly lied to others concerning the criminal activities of Barboza and Flemmi.

147. In part, the defendants Rico and Condon benefited from the conspiracy alleged herein by, among other ways: (a) increased prestige and promotions for the individual agents and the Boston field office of the FBI, in general; (b) receiving gifts of money and other things of value from Barboza and Flemmi; (c) concealing from the public and courts that the FBI Manual Guidelines regulating the handling of informants had been systematically ignored; (d) concealing from the public and courts that agents of the FBI had violated the laws of the United States of America, thus saving the defendant United States from the adverse publicity and harm to reputation associated with the indictment of one or more of its agents or the public revelation of the conduct alleged within this Complaint; (e) concealing from the public, courts, and litigants the conduct alleged in this complaint in order to prevent persons from challenging the legality of their convictions; and (f) concealing from the public, courts and litigants the conduct alleged in this complaint, thus precluding persons who had been unlawfully imprisoned or harmed, including your plaintiff, from making claims against the defendant United States.

148. As part of the conspiracy and in furtherance thereof, in or about October and November 1964, as well as in February and early March 1965, the FBI, Rico and Condon learned of Flemmi's desire and intention to kill Deegan.

149. On or about March 12, 1965, Deegan was set up, tortured and murdered by Barboza, Flemmi, and others.

150. The defendant United States by and through defendants Rico and Condon, others failed to undertake any serious investigation of Deegan's murder.

151.    The defendant United States, and its agency, the Federal Bureau of Investigation negligently continued to utilize Barboza as a cooperating witness and Flemmi as an informant; negligently failed to control the criminal activities of Barboza and Flemmi, negligently failed to enforce the FBI Manual Guidelines governing informants, including Barboza and Flemmi; negligently and in violation of the regulations and policies of the defendant United States failed to inform the appropriate law enforcement or prosecutive authorities of the criminal activities of Barboza and Flemmi; negligently failed to properly supervise federal agents, including Connolly and Morris, in their handling of Barboza and Flemmi; negligently continued to allow Rico to remain Flemmi's "handler" when it was known or should have been known that he should have been removed from that position; negligently failed to warn and protect Deegan after they were aware of his impending death; and negligently failed to investigate for the purpose of prosecution the circumstances of Deegan's disappearance and death.

152.    As a result of these wrongful acts by agents and employees of the defendant United States, events occurred that a reasonable, prudent person would have foreseen in light of the circumstances set forth herein, including the attack, torture and wrongful death of Edward Deegan. The tortious conduct of such employees was a material element and proximate cause in bringing about Deegan's attack, torture and death.

153.    By reason of the negligence of defendants Rico and Condon, and United States, the next of kin has been deprived of compensation for the loss of reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice and reasonable funeral and burial expenses as well as other damages pursuant to MGL Ch. 229, § 2.

154. These actions undertaken in furtherance of the conspiracy alleged herein violated Deegan's clearly established right to be secure in his person from unreasonable seizures, guaranteed by the Fourth Amendment to the United States Constitution, that is, force which was, considering all the circumstances, unreasonable in that it was not intended to achieve any lawful purpose.

155. These actions undertaken in furtherance of the conspiracy alleged herein also violated Deegan's clearly established substantive due process right not be deprived of life or liberty without due process of law, guaranteed by the Fifth Amendment to the United States Constitution because the force used was arbitrary and/or reckless and highly likely to cause harm, and shocks the conscience.

156. As a direct, proximate, and foreseeable result of the conspiracy alleged herein and defendants Rico and Condon, Deegan was actually denied his constitutional rights pursuant to the Fourth and Fifth Amendments to the United States Constitution, and suffered extreme and severe fright, shock, fear, horror, emotional distress and wrongful death.

157. The actions of defendants Rico and Condon, alleged above, were an extreme deviation from reasonable standards of conduct, undertaken intentionally, with actual malice, and/or reckless disregard for their likely consequences. As a result, the plaintiff is entitled to an award of punitive damages.

### Count XI – Reasonable Attorney's Fees and Cost of Suit – Defendants United States, Rico, and Flemmi

158. The plaintiff incorporates the facts alleged in paragraphs 1-157 if this Complaint and repeats and recites all previous allegations as if fully set forth herein.

159. The plaintiff has been required to retain the services of counsel to prosecute the present lawsuit.

160. The actions of the Defendants alleged above were in no instance substantially justified under the circumstances. The Estate is therefore entitled to an award of reasonable attorneys' fees and costs of suit in prosecuting the present action, under the provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412; F.R.Civ.P. 54; and pursuant to other provisions of law.

WHEREFORE, the plaintiff demands judgment against defendants as follows:

A. Damages in the amount of $100,000,000.00;
B. Plaintiff's costs and reasonable attorneys' fees in this action; and
C. Such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Respectfully submitted,
The Estate of Edward Deegan
By their Attorneys
DENNER O'MALLEY, LLP

By: _____
Jeffrey A. Denner, BBO #120520
Carol A. Fitzsimmons, BBO# 561353
Denner O'Malley, LLP
4 Longfellow Place, 35th Floor
Boston, MA 02114
(617) 227-2800

Dated: September 14, 2004

By: _____
Anthony M. Cardinale, BBO #073460
655 Summer Street
Boston, MA 02210
(617) 345-5400